BARRY, Judge.
Albert Bolin, an iron worker, appeals the dismissal of his tort claim which resulted from a work-related injury and his employer and its insurer appeal his entitlement to total and permanent disability benefits. Bolin contends the trial court erred by finding that his accident did not occur as he claimed and that he was contributorily negligent. The employer argues that a subsequent accident caused his disability.
On February 4, 1981 Bolin, an employee of Payne & Keller Gulf Coast, Inc., injured his knees when he fell from a smoke stack which had been lowered to the ground at Gulf Alliance Refinery. Bolin testified that his foreman ordered him to climb the side of the stack after dark in order to disconnect a crane hook from a two inch choker cable.' Bolin said that was a one man job which he had undertaken many times. He stated that in order to locate the hook in *617 the darkness, he scaled an I-beam attached to stiffener rings surrounding the stack. When he was approximately ¾ up the beam, he grabbed an L-shaped piece of metal which he assumed was a securely welded angle iron, then attempted to throw his body over the top of the stack. The metal snapped and Bolin fell to the ground landing on his feet but causing an impact on his knees.
The accident report signed by Michael McGuire, the assistant job superintendent, specifies: “While climbing on side of stack, he slipped and twisted his L. knee.” The report does not mention angle iron giving way. The only eye witness did not testify.
In a deposition taken the year following the accident, Bolin stated that his foreman was rushing him and that for the first time in his eight years of iron work, he blindly grabbed the metal without testing it.
R.J. Gamble, Sr., the project manager, testified that Payne and Keller welded stiffener rings and lifting attachments to the stack while it was in an upright position. The stack was then lifted and placed on the ground. He stated that the stiffener rings which supported the choker were flat plates of metal about 1 inch thick projecting straight out from the stack. Gamble said that once the stack was horizontal, the crane hook could be lowered and removed from the choker by workers standing on the ground. Thus, there was no need for anyone to climb the stack in order to unhook the rig. He also said there was no I-beam, flange, or lip on the stiffener ring and that removing a heavy 2 inch choker cable from the crane hook required two men.
McGuire agreed that once the cable was loosened, at least two men were needed to disconnect the crane hook due to its weight. He stated that one man on the top of the stack could have done nothing and there was no reason for anyone to climb the top end of the stack because all reconstruction work was taking place at the base. Neither McGuire nor David Butcher, a field engineer at Gulf Alliance, recalled seeing angle iron on the stack and both testified that they knew of no reason for its placement on that particular stack.
Arthroscopic surgery performed by Dr. Bernard Manale, orthopedist, in May 1981 revealed torn lateral and medial menisci and degenerative chondromalacia of Bolin’s left knee and a small amount of synovitis in his right knee. Portions of the lateral and medial menisci were removed from the left knee in June, 1981 and a partial menis-cectomy and drilling of the mediofemoral condyle were performed in August, 1981. Dr. Manale noted a minimum 15% anatomic disability of his lower left leg and told him to curtail strenuous lifting, climbing, bending and stooping. Aetna Casualty & Surety Company paid compensation benefits from the date of the accident until January, 1982.
Following surgery Bolin moved to Kentucky and did not seek employment until May, 1982 because he was using crutches. From July, 1983 until December, 1985 Bolin was employed as a welder-operator, but stated that his left knee ached constantly and continued to “give out”. Dr. James Heinrich, orthopedist, performed a diagnostic arthroscopy and operated on Bolin’s left knee in December, 1985 to repair torn medial and lateral menisci and to reconstruct a torn anterior cruciate ligament. Dr. Heinrich estimated Bolin had a 50% disability of his left extremity below the groin, but testified that the final result of the surgery could not be determined for five years. He cautioned Bolin to avoid climbing because his knee could “give way” at any time.
Bolin sued Gulf Oil Corporation and Gulf Alliance Refinery alleging negligence and strict liability, and Payne and Keller and Aetna Casualty for compensation benefits. Gulf filed a third party demand against Payne & Keller and Aetna alleging contractual indemnification. Aetna intervened for reimbursement of $9,884 medical expenses and $7,941 workmen’s compensation benefits.
The trial court dismissed Bolin’s tort claims and the third party demands and found Bolin totally and permanently disabled.
The trial court’s reasons specified:
*618 It is apparent that the accident could not have conceivably happened as plaintiff testified it happened.
Plaintiff failed to produce any witnesses and particularly the foreman who instructed him to climb the stack and his co-employee who was working with him. It is also illogical that given the physical layout that the stack had to be climbed in order to disengage the crane hook from the cable bridle or choker but rather the practical and easy way to achieve the purpose would have been to lower the crane hook and cable to the ground where the crane hook could easily be disengaged by one person. There was testimony to the effect that it would be impossible for one person, because of the weight of the crane hook and cable bridle to disengage the crane hook from the position on the top of the stack.
The trial judge was in a better position to evaluate the witnesses’ credibility and we will not disturb his factual finding absent manifest error. Canter v. Koehring, 283 So.2d 716 (La.1978). We find none.
Payne and Keller and Aetna contend that Bolin’s disability did not result from his fall, rather from a subsequent intervening cause and he is not entitled to total and permanent benefits. They point out that Dr. Heinrich’s testimony indicated that Bolin’s condition in 1985 was precipitated by a torn anterior cruciate ligament, whereas, Dr. Manale's 1981 report does not mention the anterior cruciate. They also note that there was a lapse in Bolin’s treatment from October, 1981 until May, 1984 and then again until October, 1985 and that Bolin had continuous employment from July, 1983 until December, 1985. Payne and Keller and Aetna argue that Bolin’s disability is related to an accident or injury which occurred after 1981.
La.R.S. 23:1221 (prior to the 1983 amendment) provides:
(2) For injury producing permanent total disability of an employee to engage in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds per centum of wages during the period of such disability.
Belt v. State, through the Louisiana Board of Cosmetology, Commerce Department, 493 So.2d 278 (La.App. 3rd Cir.1986), writ denied 496 So.2d 1044 (La.1986) examined the issue of total and permanent benefits when the worker returns to work but still has substantial pain:
An injured employee is totally disabled if he is unable to pursue any gainful employment without experiencing substantial pain. The worker has the burden of proving his disability to a legal certainty and by a reasonable preponderance of the evidence. (Citations omitted.)
Bolin was treated by four orthopedists during a four year span. Two arthrosco-pies were performed on his left knee and one on his right. He underwent three surgical procedures between June, 1981 and December, 1985 and was ordered not to return to any type of work that involved heavy lifting, bending, stooping or climbing (all necessary activities for an iron worker). Dr. Manale’s prognosis following the August, 1981 partial meniscectomy was guarded and he determined that Bolin had a 15% anatomic disability.
Bolin testified that he received physical therapy three times weekly through December, 1981 and remained on crutches until May, 1982. He continued to experience pain although he was able to work as a welding operator until December, 1985 when reconstruction of his anterior cruciate ligament was necessary.
Dr. Heinrich’s treatment in 1985 established that Bolin’s torn ligament was directly related to the fall and opined that Dr. Manale did not probe the anterior cruciate ligament because arthroscopy was relatively new in 1981. He estimated a 50% disability of Bolin’s left extremity below the groin. He stated Bolin would need crutches for approximately three months and the *619 full extent of recovery could not be known for five years.
Whether a compensation claimant is suffering pain which is disabling is a question of fact to be decided on the preponderance of medical and lay evidence. The factual findings of the trial court as to disability are entitled to great weight and will not be disturbed unless manifestly erroneous. Belt, supra.
We are satisfied that the trial judge’s conclusion is supported by the evidence and there is no manifest error.
The judgment is affirmed.
AFFIRMED.